IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| EARL L. BARNES, <br><br> Plaintiff, <br><br> v. <br><br> SHAYNE NORTON et al., <br><br> Defendants. | **MEMORANDUM DECISION & ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:15-CV-157-TC <br><br> District Judge Tena Campbell |
|---|---|

*Pro se* plaintiff Earl L. Barnes filed this prisoner civil-rights action.[1] The Amended Complaint[2] alleges that Defendants Shayne Norton, Alan Howard, Roger Peterson, Chad Dufford and Sidney Roberts—Utah State Prison (USP) officials—violated Barnes' rights under the Eighth Amendment when, after accusing him of "cheeking" prescription pain medication, they discontinued his prescription. Barnes further alleges that Defendants' behavior constituted medical malpractice under Utah state law.

Before this Court is Defendants' Motion for Summary Judgment.[3] Defendants assert that (1) they are entitled to qualified immunity on Barnes' Eighth Amendment Claims, and (2) Barnes' medical malpractice claims fail under state law. As discussed below, the Court agrees that the Defendants are entitled to qualified immunity and, accordingly, dismisses the

---

[1] 28 U.S.C.S. § 1915 (2018); 42 *id*. § 1983.
[2] (Docket No. 18.)
[3] (Docket No. 48.)

Eighth Amendment claims with prejudice. The court declines to exercise supplemental jurisdiction over the state law claims,[4] which it dismisses without prejudice.

## I. UNDISPUTED MATERIAL FACTS

Earlier in the case, this Court notified Barnes that, in response to a summary-judgment motion, "Plaintiff cannot rest upon the mere allegations in the Complaint. Instead . . . Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial."[5] Barnes filed separate responses to Defendants' *Martinez* report[6] and Motion for Summary Judgment.[7] Neither response follows the requirement that Plaintiff assert specific facts, supported by admissible evidence, showing a genuine issue of fact requiring trial.

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .[8]

Such is the case here. The Court therefore adopts Defendants' statement of undisputed material facts, drawn from their Motion for Summary Judgment, as follows:

1. On January 7, 2014, Defendant Dufford refilled Barnes' Tramadol and Neurontin prescriptions.[9]

2. Tramadol is a synthetic opioid narcotic pain medication with high potential for abuse and diversion.[10]

---

[4] *See* 28 U.S.C.S. § 1367(c)(3) (2018) (giving court discretion to decline supplemental jurisdiction over state law claims when all federal claims have been dismissed).
[5] (Mem. Decision & Order Dismissing Defs. & Ordering Serv. on Remaining Defs. at 60, Docket No. 19); *see also* Fed. R. Civ. P. 56(c) (requiring factual positions be supported by citation to *inter alia* depositions, documents, electronically stored information, affidavits or declarations, stipulations or other materials).
[6] (Docket No. 49.)
[7] (Docket No. 52.)
[8] Fed. R. Civ. P. 56(e).
[9] (Defendants' *Martinez* report, Docket Nos. 45-14, at ¶ 5; 45-1.)
[10] (*Id.*, Docket Nos. 45-13 at ¶ 8, 45-14 at ¶ 5.)

3. Neurontin is prescribed to treat neuropathic pain (originating from nerve injuries) and has high potential for abuse and diversion.[11]

4. Tramadol and Neurontin are highly sought after within the prison population, are distributed through prison black markets, and put inmates who have these prescriptions at risk of being strong-armed or threatened for their medications.[12]

5. "Cheeking" occurs when an inmate hides his medication under his tongue, against his gums, or elsewhere in his mouth.[13]

6. Cheeking is a primary way to divert medication into the prison population.[14]

7. Cheeking is a violation of prison policy and a serious abuse of prescription medication.[15]

8. Prison policy as to abuse or misuse of medications reads, in relevant part, as follows: "Elements: An offender may be charged with this offense if the offender . . . failed to take medication as prescribed . . . ."[16]

9. When an inmate is caught cheeking, prison medical staff members have a policy of discontinuing the inmate's prescription pain medication for six months.[17]

10. When an inmate disputes a cheeking allegation, prison medical staff may submit the matter to an informal group of prison physicians, physician assistants and prison nurse practitioners (medical review board) to determine whether to reinstate the medication.[18]

11. If the medical review board concludes the cheeking allegation is unsubstantiated or anomalous the board will consider reinstating the medication.[19]

12. To prevent hoarding and diversion of prescription pain medication, USP dispenses medication at a pill line where each inmate is provided his medicine and a glass of water. After swallowing the medication, the inmate opens his mouth for a visual inspection to ensure the medication has been swallowed.[20]

---

[11] (*Id.*)
[12] (*Id.* 45-14, at ¶ 5.)
[13] (*Id.* 45-13, at ¶ 11.)
[14] (*Id.*)
[15] (*Id.* 45-14, at ¶ 6, & 45-9.)
[16] (*Id.* 45-9, at FD01/06.03 B-13.)
[17] (*Id.* 45-13, at ¶ 12.)
[18] (*Id.*)
[19] (*Id.*)
[20] (*Id.* at ¶ 10; *id.* 45-10, at ¶ 12.)

13. Inmates are given enough time to swallow their medication and may speak to the medical technician on duty if they are having difficulty swallowing their medication.[21]

14. When an inmate opens his mouth for inspection, the inmate is communicating non-verbally that he has taken his medication as prescribed.[22]

15. Before March 12, 2014, Barnes had been to pill line many times and showed an understanding of the process for taking his prescription pain medication.[23]

16. On March 12, 2014, in the pill line, Defendant Norton gave Barnes a cup of water and his Tramadol and Neurontin medications.[24]

17. Barnes placed both pills in his mouth and swallowed.[25]

18. When Barnes opened his mouth, Norton observed white residue on his tongue and asked Barnes to open his mouth wider. This revealed two pills on the roof of Barnes' mouth.[26]

19. After Norton told Barnes that he was cheeking his medication, Barnes closed his mouth and swallowed.[27]

20. Barnes asked Defendant Norton if he could remove his dentures to show that he did not have pills in his mouth but by then Barnes had already had a second chance to swallow.[28]

21. Defendant Norton described his observations of Barnes' cheeking to Defendant Howard.[29]

22. Defendant Norton entered the following description of Barnes' cheeking as a note in Barnes' medical chart:

23. IM BARNES WAS GIVEN BOTH HIS GABAPENTIN AND TRAMADOL DURING PM PILL LINE ON 3/12/14. IM PUT THE PILLS IN HIS MOUTH AND TOOKE [SIC] A DRINK FROM HIS CUP. MEDICAL ASKED TO SEE THE IM'S MOUTH. IM SHOWED HIS MOUTH. THERE WAS A WHITE MARK ON THE IM'S TONGUE SO MEDICAL ASKED

---

[21] (*Id.* 45-10, at ¶ 13, & 45-11, at ¶ 12.)
[22] (*Id.* 45-10, at ¶ 13, & 45-11, at ¶ 12.)
[23] (*Id.* 45-10, at ¶ 16, & 45-11, at ¶ 15.)
[24] (*Id.* 45-10, at ¶ 17.)
[25] (*Id.*)
[26] (*Id.*)
[27] (*Id.*)
[28] (*Id.*)
[29] (*Id.* at ¶ 18.)

TO SEE THE ROOF OF HIS MOUTH. IM STARTED TO DELAY, IM
WAS INSTRUCTED TO STOP AND SHOW THE ROOF OF HIS MOUTH.
WHEN IM OPENED HIS MOUTH AND LIFTED HIS HEAD MEDICAL
WAS ABLE TO SEE HIS PILLS ON THE ROOF OF HIS MOUTH.
OFFICERS WERE INFORMED OF THE SITUATION.[30]

24. On March 12, 2014 Defendant Dufford reviewed Norton's chart note and discontinued Barnes' Tramadol and Neurontin prescriptions.[31]

25. Defendant Dr. Roberts saw Barnes on March 19, 2014 for a urinary tract issue.[32]

26. Barnes asked that Dr. Roberts reinstate his Tramadol and Neurontin medications.[33]

27. Barnes did not ask Dr. Roberts to give him non-narcotic pain medication.[34]

28. Dr. Roberts reviewed Barnes' chart notes, concluded the pills had not been swallowed, and chose not to submit Barnes' request for reinstatement to the medical review board.[35]

29. Between March 19 and June 11, 2014, Barnes did not seek any medical treatment for pain.[36]

30. At all relevant times, Barnes had access to over-the-counter pain medication such as acetaminophen, ibuprofen, aspirin or naproxen sodium either by requesting to be seen by a medical provider or by buying over-the-counter pain medication from the commissary.[37]

31. Barnes bought 100 aspirin from the commissary on March 26, 2014.[38]

32. Defendant Howard drafted a major disciplinary (MD-1) charge against Barnes charging Barnes with an A-13 violation and stating "Inmate Barns (sic) had placed one Tramidol [sic] pill and one Neurontin pill in Fixodent that was attached to the roof of his mouth. Medical Technition [sic] Shayne Norton caught Inmate Barnes with the cheeked medication."[39]

---

[30] (*Id*. 45-1.)
[31] (*Id*. 45-14, at ¶ 8, & 45-1.)
[32] (*Id*. 45-13, at ¶ 15.)
[33] (*Id*.)
[34] (*Id*. at ¶ 16.)
[35] (*Id*. at ¶ 15, & 45-1.)
[36] (*Id*. 45-1 & 45-14, at ¶ 10.)
[37] (*Id*. 45-14, at ¶ 9, & 45-13, at ¶ 9.)
[38] (*Id*. 45-8.)
[39] (*Id*. 45-4 & 45-11, at ¶ 17.)

5

33. Defendant Howard also drafted an incident report stating Barnes was caught by medical staff trying to cheek his medications.[40]

34. Defendant Peterson reviewed the MD-1 and Incident reports for accuracy and grammar.[41]

35. An A-13 violation occurs when an offender possesses a prescription drug not prescribed to the offender.[42]

36. On May 28, 2014, Hearing Officer Doug Cook found Barnes not guilty of the A-13 violation, and concluded that Barnes should have been charged with a B-13 violation.[43]

37. Defendant Norton does not decide whether an inmate receives prescription pain medications after the inmate is caught cheeking.[44]

38. Defendant Howard does not decide whether an inmate receives prescription pain medications after an inmate is caught cheeking.[45]

39. Defendant Peterson does not decide whether an inmate receives prescription pain medications after an inmate is caught cheeking.[46]

40. On June 11, 2014, Barnes told Defendant Dufford that he had been found not guilty of cheeking and asked to have his Tramadol and Neurontin prescriptions reinstated.[47]

41. Barnes did not ask Defendant Dufford for alternative pain medication.[48]

42. Defendant Dufford agreed to submit Barnes' request to the medical review committee for consideration, and Barnes indicated he was satisfied with this course of action.[49]

43. The medical review committee approved Barnes' request and Defendant Dufford reinstated Barnes' Tramadol and Neurontin prescriptions on July 2, 2014.[50]

44. Between March 12, 2014 and July 2, 2014, Barnes regularly participated in prison activities, including gym.[51]

---

[40] (*Id*. 45-5 & 45-11, at ¶ 17.)
[41] (*Id*. 45-12, at ¶ 13.)
[42] (*Id*. 45-9, at FD01/06.02 A-13, & 45-17, at ¶ 9.)
[43] (*Id*. 45-4 & 45-17, at ¶ 10.)
[44] (*Id*. 45-10, at ¶ 20.)
[45] (*Id*. 45-11, at ¶ 20.)
[46] (*Id*. 45-12, at ¶ 15.)
[47] (*Id*. 45-14, at ¶ 10, & 45-1.)
[48] (*Id*. 45-14, at ¶ 10, & 45-1.)
[49] (*Id*. 45-14, at ¶ 10, & 45-1.)
[50] (*Id*. 45-14, at ¶ 11, & 45-1.)

45. Prison medical staff prescribed Tramadol and Neurontin to treat Barnes' pain associated with calcifying tendonitis in his shoulder and nerve damage from a gunshot wound in Barnes' forearm.[52]

46. Neither of Barnes' conditions was life-threatening or emergent (i.e., requiring prompt attention).[53]

47. Tramadol and Neurontin did not treat Barnes' underlying conditions of calcifying tendonitis and neuropathic injury, but rather were an elective option to give comfort for the pain associated with those conditions.[54]

48. Barnes' conditions were not made worse by discontinuation of Tramadol and Neurontin.[55]

49. Tramadol and Neurontin were not Barnes' only options for treating his pain.[56]

50. Over-the-counter pain relievers such as acetaminophen, ibuprofen, aspirin and naproxen sodium are available to inmates for treatment of chronic pain and are effective non-narcotic, non-addicting treatment options for chronic pain.[57]

51. In November 2014, Barnes was diagnosed with carpal tunnel syndrome and had elective carpal tunnel release surgery on January 7, 2015.[58]

52. Barnes' carpal tunnel syndrome was not caused or made worse by discontinuation of Tramadol and Neurontin between March and July of 2014.[59]

## II.     SUMMARY-JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[60] Courts need not blindly accept Plaintiff's often one-sided version of events, but rather must consider the "factual matrix" most

---

[51] (*Id.* 45-6.)
[52] (*Id.* 45-13, at ¶ 7.)
[53] (*Id.*)
[54] (*Id.* at ¶ 9; 45-14, at ¶ 12.)
[55] (*Id.* 45-13, at ¶ 9.)
[56] (*Id.*)
[57] (*Id.*)
[58] (*Id.* 45-13, at ¶ 20, & 45-1.)
[59] (*Id.* 45-13, at ¶ 20.)
[60] Fed. R. Civ. P. 56(a).

7

favorable to the Plaintiff.[61] Still, in his opposition to the motion for summary judgment, Plaintiff must provide "significant probative evidence tending to support the complaint."[62] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[63] A summary-judgment motion based on qualified immunity places additional burdens on the plaintiff that are not found in the typical summary-judgment setting.[64]

### III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM.

Qualified immunity shields government officials from § 1983 damages suits so long as "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[65] When a state official asserts qualified immunity, he creates a rebuttable presumption that he is immune from the plaintiff's § 1983 claims.[66] The Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[67] Qualified immunity may be denied only if, on an objective basis, it is obvious that no reasonably competent official would have concluded that the actions were constitutional.[68] But, "if [officials] of reasonable competence could disagree about the lawfulness of the challenged conduct, then [qualified] immunity should be recognized."[69]

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right

---

[61] *See Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003).
[62] *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968).
[63] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249–50 (1986) (citations omitted).
[64] *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).
[65] *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[66] *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).
[67] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[68] *Gomes*, 451 F.3d at 1134; *see also Gray v. Gray*, No. 2:12-cv-1204, 2014 WL 4715871, at *1 (D. Utah Sept. 22, 2014) (unpublished).
[69] *Gomes,* 451 F.3d. at 1136 (internal quotations omitted).

at issue was "clearly established" at the time of the defendants' alleged misconduct.[70] If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity."[71] "Once the qualified-immunity defense is asserted, 'the plaintiff initially bears a heavy two part burden'" of showing that the alleged conduct "'violated a constitutional or statutory right'" and that the right was "'clearly established at the time of the conduct at issue.'"[72] "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."[73] The Supreme Court has repeatedly held that courts should not "define clearly established law at a high level of generality."[74] Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established."[75]

### A. Defendants Did Not Violate Plaintiff's Eighth Amendment Rights.

"'[D]eliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'"[76] "'Deliberate indifference' involves both an objective and a subjective component."[77]

The objective component is met if the deprivation is "sufficiently serious."[78] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating

---

[70] *Pearson v. Callahan*, 555 U.S. 223, 232 (2008).
[71] *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).
[72] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995)).
[73] *Archuleta,* 523 F.3d at 1283 (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)).
[74] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2010)).
[75] *Id.*
[76] *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).
[77] *Id.*
[78] *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal quotation marks omitted).

9

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[79]

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."[80] "In measuring a prison official's state of mind, 'the official must be both aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference.'"[81]

Disagreement with medical judgment does not constitute deliberate indifference.[82] Further, negligence allegations are insufficient to state a claim.[83] And "[d]elay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."[84] The "substantial harm requirement" can be met by showing "lifelong handicap, permanent loss, or considerable pain."[85]

The Tenth Circuit has held that discontinuation of prescription pain medication after allegations that an inmate was cheeking his medication does not violate the Eighth Amendment. In *Todd v. Bigelow*,[86] an inmate was prescribed Neurontin due to hip and back pain caused by a degenerative disorder.[87] Prison officials discontinued his Neurontin medication after he was caught cheeking his medication.[88] The inmate unsuccessfully sought reinstatement of his

---

[79] *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999).
[80] *Farmer,* 511 U.S. at 837.
[81] *Martinez*, 430 F.3d at 1304 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).
[82] *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997).
[83] *Estelle*, 429 U.S. at 105.
[84] *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir 2000).
[85] *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).
[86] 497 F. App'x 839 (2012).
[87] *Id.* at 840.
[88] *Id.* at 841.

prescription.[89] The inmate also initially declined other prescribed pain relievers, before eventually accepting medication less prone to abuse.[90] The inmate sued several prison officials, alleging that he did not mean to abuse or divert his medication and that denial of his Neurontin violated the Eighth Amendment.[91] The Tenth Circuit rejected his claim, noting that even if the medical staff incorrectly concluded the inmate meant to abuse his medication, the withholding of his Neurontin prescription was not deliberate indifference. "Instead, it reflects a legitimate penological interest in prevention of drug abuse."[92] Further, the court noted that the inmate's preference for Neurontin over the medications which were offered to him, did not give rise to an Eighth Amendment violation.[93] "[A] difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference."[94]

The Tenth Circuit has also addressed inmate attempts to bring Eighth Amendment medical-care claims against non-medical prison officials who pursue discipline against inmates for prescription-medication abuse. In *Wisheneski v. Andrade,* a prison physician discontinued an inmate's narcotic pain reliever after prison officials found the inmate was hoarding his medication and brought disciplinary proceedings against him.[95] The disciplinary proceedings were later dismissed due to absence of chain-of-custody documentation for the medication found

---

[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.* at 842.
[94] *Id.; see also Wisheneski v. Andrade*, 572 F. App'x 563 (10th Cir. 2014) (stating inmate may not prevail on challenge to medical judgment in substituting other medications for narcotic painkiller); *Johnson v. Richins*, 438 F. App'x 647 (10th Cir. 2011) (concluding prison officials not deliberately indifferent when suspended Neurontin and Darvocet prescription because of *suspicion* inmate cheeking pills) (emphasis added); *Pumphrey v. Wood*, No. 1:12-CV-115-TS, 2015 U.S. Dist. LEXIS 38754, at **5-20 (D. Utah March 25, 2015) (unpublished) (deciding inmate's medical condition not sufficiently serious to state Eighth Amendment claim for failure to prescribe Neurontin (gabapentin) when medication would not stop advancement of underlying medical condition).
[95] 572 F. App'x at 565.

in the inmate's cell.[96] The inmate then sued both the prison doctor and hearing officer, asserting that the hearing officer pressured the doctor to stop the medication because dismissal of the disciplinary action was based on technicality rather than factual innocence.[97] The Tenth Circuit rejected the inmate's appeal, specifying that "discontinuance of [the inmate's] MS Contin prescription was a *medical* decision made by [the prison physician]" and noting that there was no "evidence of any prison policy, disciplinary directive, or pressure from [the hearing officer] constraining [the physician's] exercise of professional judgment in that regard."

Against the backdrop of these principles and precedents, Barnes' claims fail on both the objective and subjective prongs of the Eighth Amendment deliberate-indifference analysis. First, the undisputed material facts clarify that Barnes was prescribed Tramadol and Neurontin to address pain from calcifying tendonitis in his shoulder and neuropathic pain caused by a gunshot wound. Neither medication treated Barnes' underlying conditions, nor did the withholding of these medications cause Barnes's conditions to deteriorate further. These medications offered comfort only. Barnes' unsupported allegation that he needed carpal-tunnel-release surgery because he was denied Tramadol and Neurontin is medically inaccurate. Discontinuation of Barnes' prescription pain medication did not subject Barnes to a deprivation severe enough to implicate the Eighth Amendment.

Second, Barnes cannot show that Defendants were deliberately indifferent to a serious risk of substantial harm. Tramadol and Neurontin both have potential for abuse and diversion within the USP. Prison officials have a legitimate penological interest in preventing abuse of these drugs through hoarding or diversion accomplished by cheeking. Further, Barnes' pain

---

[96] *Id.* at 566.
[97] *Id.* at 565.

apparently did not reach such a threshold that he even sought alternative pain medication from the prison medical staff, and it did not keep him from regular prison activities, including gym. When Barnes saw Defendant Dr. Roberts on March 19, 2014, he did not request alternative medication but demanded that his prescription medication be reinstated. He did not seek pain-relief medication from USP medical staff again until June 11, 2014, after the hearing officer dismissed the A-13 charge.[98] Even then, he did not ask for alternative pain medication, but rather for reinstatement of Tramadol and Neurontin. And when Defendant Dufford agreed to refer Barnes' request to committee, Barnes indicated that was enough. Further, at all relevant times, he had access to non-prescription pain relief like aspirin, acetaminophen, ibuprofen, and naproxen sodium through the commissary. He even opted to buy aspirin at one point. Barnes' allegation that prison medical staff violated his Eighth Amendment rights by not giving him the medication of his choice is merely a disagreement with his treatment providers' medical judgment and does not show deliberate indifference.

Finally, Barnes may not assert Eighth Amendment claims for discontinuation of his Tramadol and Neurontin prescriptions against Defendants Norton, Howard and Peterson. The undisputed material facts indicate the decision to discontinue Barnes' medication (and not reinstate it) were medical decisions made by Defendants Dufford and Dr. Roberts. There is no evidence that Norton, Howard, and Peterson's investigation and processing of the disciplinary allegations against Barnes prevented Dr. Roberts and Dufford from exercising their own professional judgment as to whether to discontinue Barnes' Tramadol and Neurontin. Rather,

---

[98] The fact that Barnes did not seek further pain treatment for a period of nearly three months, and continued to participate in gym, also indicates Barnes' condition was not objectively serious enough to implicate the Eighth Amendment.

13

both Dr. Roberts and Dufford made their decisions after reviewing Norton's detailed description of the cheeking incident in Barnes' chart and concluding that further dispensing of Tramadol and Neurontin to Barnes presented an unacceptable risk of abuse and diversion. Because Barnes cannot establish either the objective or subjective prongs of an Eighth Amendment violation, Defendants are entitled to judgment as a matter of law.

### B. Plaintiff Cannot Establish that Defendant's Conduct Violated Clearly Established Law.

As for the second prong of the qualified immunity analysis, Barnes cannot point to any case in the Tenth Circuit or the Supreme Court of the United States that holds that prison officials violate the Eighth Amendment when they discontinue an inmate's prescription painkiller medication following allegations of diversion and abuse. Accordingly, Barnes cannot meet his burden of showing that discontinuing his Tramadol and Neurontin, after he was accused of cheeking those medications, violates a clearly established right.

### IV. CONCLUSION

Defendants are entitled to qualified immunity on Barnes' Eighth Amendment claim and, accordingly, judgment as a matter of law.

### V. ORDER

For the reasons set forth above, Defendants' Motion for Summary Judgment[99] as to Plaintiff's inadequate-medical-treatment claim under the Federal Constitution is **GRANTED**. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental

---

[99] (Docket No. 48.)

jurisdiction over Plaintiff's state-law claims of medical-malpractice, and so those are

**DISMISSED WITHOUT PREJUDICE**.

DATED this 29th day of March, 2018.

BY THE COURT:

_____
JUDGE TENA CAMPBELL
United States District Court